# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 210 BRANDS INCORPORATED, a Nevada corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CANTERBURY OF NEW ZEALAND LIMITED, an English corporation, and<br>PENTLAND GROUP LIMITED, an English corporation,<br><br>    Defendants. | Case No. 2:20-cv-06853-JWH-ASx<br><br>**ORDER ON MOTION OF PLAINTIFF 210 BRANDS INCORPORATED TO REMAND AND MOTION OF DEFENDANT PENTLAND GROUP LIMITED TO DISMISS [ECF Nos. 24 & 12]** |

## I.  INTRODUCTION

Before the Court are the motion of Plaintiff 210 Brands Incorporated to remand this action to state court[1] and the motion of Defendant Pentland Group Limited to dismiss the Complaint.[2]  For the reasons discussed in detail below, the Court **DENIES** the Motion to Remand and **GRANTS** the Motion to Dismiss on the grounds of insufficient service of process and *forum non conveniens*.

## II.  BACKGROUND[3]

On June 10, 2020, 210 Brands filed its Complaint in Ventura County Superior Court.[4]  210 Brands purported to serve Pentland on June 20, 2020, but Pentland disputes that it was properly served.[5]  On July 30, 2020,[6] Pentland removed the action to this Court.[7]

210 Brands alleges that it entered into a License and Distribution Agreement (the "License Agreement") with Defendant Canterbury of New Zealand Limited.[8]  "Canterbury is a United Kingdom-based sports clothing

---

[1]     Pl.'s Mot. to Remand (the "Motion to Remand") [ECF No. 24].

[2]     Def. Pentland's Mot. to Dismiss the Compl. (the "Motion to Dismiss") [ECF No. 12].

[3]     The Court restates 210 Brands' allegations but makes no determination about their veracity at this stage of the case.  *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (on motion to dismiss for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party").

[4]     Compl. [ECF No. 43-1] at 1:1-6.

[5]     Def. Pentland's Notice of Removal of Action from State Court to Federal Court Under 28 U.S.C. § 1441(b) (Diversity) (the "Notice of Removal") [ECF No. 1].

[6]     It is not clear if removal was timely.  210 Brands contends that it effected service on Pentland on June 20, 2020.  Pentland removed the action to this Court on July 30, 2020—more than 30 days later.  *See* 28 U.S.C. § 1446.  A defect of this type is waivable, however.  *Corona-Contreras v. Gruel*, 857 F.3d 1025, 1029 (9th Cir. 2017) (timing of removal waivable procedural defect).

[7]     Notice of Removal [ECF No. 1].

[8]     Compl. ¶ 1.

company, specializing in rugby football clothing items and accessories."[9] Pentland is the parent company of Canterbury.[10] According to the Complaint, Canterbury and Pentland are both English corporations having their principal places of business in London, England.[11]

In 2011, Canterbury's business in the United States was struggling, and 210 Brands was formed "in an attempt to save the Canterbury brand in the U.S. and Canadian markets."[12] In 2012, "210 Brands entered into the License Agreement with Canterbury for the exclusive distribution rights of Canterbury products in the United States and Canada for a period of 5 years."[13] In 2017, the License Agreement was renewed, and it "ran through December 31, 2022."[14]

The License Agreement contains the following language under the heading "Governing Law":

- "The formation, construction, validity and performance of this Agreement shall be governed in accordance with the laws of England."[15]
- "The parties irrevocably submit to the exclusive jurisdiction of the courts of England. Such submission shall not limit the right of Canterbury to commence any proceedings arising out of this Agreement in any jurisdiction it may consider appropriate."[16]
- "The Licensee waives any objection to the venue of any legal process on the basis that the process has been brought in an inconvenient forum."[17]

---

[9] Id. ¶ 2.
[10] Id. ¶ 15.
[11] Id. ¶¶ 14 & 15.
[12] Id. ¶ 19.
[13] Id.
[14] Id.
[15] Id., Ex. A (License Agreement) at ¶ 34.1.
[16] Id. ¶ 34.2.
[17] Id. ¶ 34.3.

According to 210 Brands, after it executed the License Agreement, "JD Sports sold the Canterbury brand to Pentland."[18] After the sale to Pentland, "210 Brands' efforts to build the Canterbury brand were constantly interrupted" by a "revolving door" of executives at Pentland.[19] 210 Brands repeatedly received approval from Defendants for its business plans, and, in reliance, it made a substantial investment that it would not have made "if it had known at that time that Pentland did not intend to afford it a reasonable opportunity to earn a return on that investment."[20] 210 Brands also invested resources in an opportunity to become a distributor of Mitre products, another Pentland brand.[21]

Among other things, 210 Brands secured an agreement with Rugby Canada, which "instantly increased its business in the Canadian market by 30% year over year."[22] Subsequently, however, Pentland advised 210 Brands that it "planned to restructure and make significant changes to its business model and personnel."[23] Rather than allowing 210 Brands to control its supply chain, Pentland "insisted on taking over that aspect of the business."[24] Pentland then mismanaged 210 Brands' orders and shipments, which led to a loss in revenue, and 210 Brands was "forced . . . to use its credit facilities with its vendors directly as it had done before to order products in an effort to climb out of the financial difficulties that were caused by Pentland."[25] Pentland subsequently used this debt "to attempt to manufacture a basis for default under the Renewed

---

[18]  Compl. ¶ 21.
[19]  Id. ¶ 22.
[20]  Id. ¶ 26.
[21]  Id. ¶¶ 31-33.
[22]  Id. ¶ 34.
[23]  Id. ¶ 36.
[24]  Id. ¶ 37.
[25]  Id. ¶ 39.

License Agreement."[26] In February 2019, citing 210 Brands' debt, Pentland "halted shipments of its licensed products,"[27] which led to a further deterioration in 210 Brands' financial condition.[28] Pentland then put pressure on 210 Brands to pay down its debt to its vendors, eventually terminating the Renewed License Agreement, purportedly on the basis of 210 Brands' debt.[29] Within a week of sending 210 Brands a Notice of Termination of the Renewed License Agreement, Pentland received hundreds of thousands of dollars by fulfilling existing orders.[30] Pentland also benefited from an order for apparel from a major clothing retailer.[31]

In essence, 210 Brands alleges that Pentland induced it to invest in the expansion of its business, but then pretextually terminated the Renewed License Agreement unfairly to appropriate the business opportunities that 210 Brands had developed.[32] 210 Brands asserts claims for relief for: (1) Violation of California Franchise Investment Law; (2) Violation of California Franchise Relations Act; (3) Violation of California Unfair Practices act; (4) Violation of California Unfair Competition Law; (5) Breach of the Covenant of Good Faith and Fair Dealing; (6) Intentional Interference with Contractual and Business Relationships; (7) Promissory Estoppel; (8) Negligent Misrepresentation; and (9) Intentional Misrepresentation.[33]

On August 6, 2020, Pentland filed the instant Motion to Dismiss. Pentland's Motion raises several threshold issues; Pentland contends that the

---

[26] *Id.*
[27] *Id.* ¶ 50.
[28] *Id.* ¶ 51.
[29] *Id.* ¶ 54-56.
[30] *Id.* ¶¶ 57 & 58.
[31] *Id.* ¶¶ 59-61.
[32] *See, e.g.*, *id.* ¶ 64.
[33] *Id.* ¶¶ 68-123.

Complaint should be dismissed for insufficient service of process and for lack of personal jurisdiction, and Pentland argues that the courts of England are a more appropriate forum under the doctrine of *forum non conveniens*.[34]  Pentland also maintains that 210 Brands fails to state a claim with respect to counts one through six, and it seeks dismissal these counts under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[35]  On August 25, 2020, 210 Brands filed the instant Motion to Remand.[36]

The Court conducted a hearing on November 6, 2020, on the two pending Motions.  On December 15, 2020, 210 Brands filed "corrected Proofs of Service of the Complaint and Summons on" Canterbury and Pentland.[37]

### III.  DISCUSSION

#### A.  Motion to Remand

Pentland's Notice of Removal is based upon diversity jurisdiction.[38]  Under 28 U.S.C. § 1332(a)(2), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" if the action is between "citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State."  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."

---

[34]     Motion to Dismiss 1:9-15.
[35]     *Id.* at 1:16-2:7.
[36]     *See* Motion to Remand.
[37]     Notice of Filing Proof of Corrected Service of Summons [ECF No. 46]. 210 Brands simultaneously withdrew its earlier filed "Proof of Service of the Complaint and Summons" on Canterbury and "corrected Proof of Service of the Complaint and Summons" on Pentland.
[38]     Notice of Removal ¶ 5.

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Evidence establishing the amount in controversy is necessary only "when the plaintiff contests, or the court questions, the defendant's allegation." *See id.*

Pentland's Notice of Removal adequately pleads diversity jurisdiction. *See* 28 U.S.C. § 1446. The Notice of Removal contains the following allegations, which facially support diversity of citizenship:

- "Plaintiff is, and was at the time of filing the Complaint, a Nevada corporation. According to the Complaint, Plaintiff's principal place of business is in the Westlake Village, County of Ventura, and State of California."[39]
- "Defendant [Pentland] is an English corporation with its principle [*sic*] place of business in London, England."[40]
- "Further, according to the pleading, diversity exists between Plaintiff and the non-moving defendant Canterbury of New Zealand Limited as this non-moving defendant is also an English corporation with its principal place of business in London, England."[41]

Notably, the Complaint contains the same allegations; *i.e.*, (1) "Plaintiff, 210 BRANDS INCORPORATED, is a Nevada corporation having its principal place of business in Westlake Village, California;"[42] (2) "Defendant CANTERBURY OF NEW ZEALAND LIMITED ('Canterbury') is an English corporation having its principal place of business in London, England;"[43] and

---

[39]  *Id.* ¶ 6 (citing Compl. ¶ 13).
[40]  *Id.* ¶ 7 (citing Compl. ¶ 15).
[41]  *Id.* ¶ 9 (citing Compl. ¶ 14).
[42]  Compl. ¶ 13.
[43]  *Id.* ¶ 14.

(3) "Defendant PENTLAND GROUP LIMITED ('Pentland') is an English corporation having its principal place of business in London, England."[44]

210 Brands' primary argument in favor of remand is that the use of the term "Limited" in the names Pentland Group Limited and Canterbury of New Zealand Limited makes them "akin to limited liability companies in the United States."[45] Thus, 210 Brands contends that the rule that "an LLC is a citizen of every state of which its owners/members are citizens" applies here. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). 210 Brands contends that "Pentland's [f]ailure to address the citizenship of its members warrants remanding the case back to the Superior Court for Ventura County."[46] The premise underlying the argument is incorrect because UK "limited" companies are not treated as LLCs. Pentland cites several cases that hold "UK private limited companies are treated as corporations for the purposes of diversity subject-matter jurisdiction." *SHLD, LLC v. Hall*, No. 15 CIV. 6225 LLS, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015).[47] Moreover, 210 Brands' argument would require that the Court overlook the allegations in 210 Brands' own Complaint, which avers that Pentland and Canterbury are English corporations. *See, e.g.*, *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (allegations in complaint "are considered judicial admissions").

210 Brands also asserts that remand is warranted "even if Pentland is a corporation."[48] 210 Brands' argument appears to be based upon the contention

---

[44] *Id.* ¶ 15.
[45] Motion to Remand 8:13-10:12.
[46] *Id.* at 9:13-15.
[47] *See also* Def. Pentland Group Limited's Opp'n to Motion to Remand [ECF No. 28] at 6:7-24.
[48] Motion to Remand 11:7.

-8-

that Pentland or Canterbury have locations in California.[49] Regardless of whether this is true, a presence in California does not mean that Pentland is a citizen of the state for diversity purposes. "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332. "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). Again, 210 Brands' own Complaint avers that Pentland and Canterbury are English corporations with their respective principal places of business in London. 210 Brands' reference to a Pentland office in California does not indicate that Pentland's principal place of business is in California,[50] nor does it overcome the judicial admissions in the Complaint.

Accordingly, based upon the allegations in the pleadings, as well as case law regarding the treatment of UK limited companies for diversity purposes, the Notice of Removal adequately pleads diversity jurisdiction, and the Motion to Remand is **DENIED**.

**B.    Motion to Dismiss**

      **1.    Insufficient Service of Process**

A party may assert insufficient process and insufficient service of process by motion. Fed. R. Civ. P. 12(b)(4)-(5). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). "'The plaintiff may not rest on the allegations in the complaint or on conclusory statements, but must meet the defendant's challenge with affidavits or other proof showing that proper service

---

[49]    *Id.* at 11:18-24.

[50]    *See id.*

was made.'" *Pacesetter Consulting LLC v. Kapreilian*, No. CV-19-00388-PHX-DWL, 2020 WL 4365898, at *3 (D. Ariz. July 30, 2020) (quoting 1 S. Gensler, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, RULE 12 at 315).

"Under California law, a summons must substantially comply with the statutory requirements in order for service of it to constitute effective service." *Matthews Metals Prod., Inc. v. RBM Precision Metal Prod., Inc.*, 186 F.R.D. 581, 582 (N.D. Cal. 1999). "A summons is the process by which a court acquires personal jurisdiction over a defendant in a civil action." *MJS Enterprises, Inc. v. Superior Court*, 153 Cal. App. 3d 555, 557 (1984). "Service of a substantially defective summons does not confer jurisdiction over a party." *Greene v. Mun. Court*, 51 Cal. App. 3d 446, 451 (1975). For example, service was inadequate when a plaintiff used an approved summons form but failed to give notice to the defendant that he was being served personally rather than on behalf of a corporate defendant. *Matthews Metals Prod., Inc. v. RBM Precision Metal Prod., Inc.*, 186 F.R.D. 581, 582 (N.D. Cal. 1999). Further, under California law, "[k]nowledge by a defendant of an action will not satisfy the requirement of adequate service of a summons and complaint." *Cty. of San Diego v. Gorham*, 186 Cal. App. 4th 1215, 1226 (2010) (citations omitted); *see also Kappel v. Bartlett*, 200 Cal. App. 3d 1457, 1466–67 (1988) (notice requirement not satisfied by actual knowledge "without notification conforming to the statutory requirements").

Here, the summons stated that Pentland's alleged agent, Robert Dundon, was served on "behalf of 210 Brands."[51] That is not correct. Mr. Dundon was served on behalf of Defendants in this case, as a vice president for non-party Pentland USA, which 210 Brands claims is a "manager" of Defendant Pentland

---

[51] *See* Decl. of Robert Dundon in Supp. of Motion to Dismiss (the "Dundon Decl.") [ECF No. 12-1], Ex. A [ECF No. 12-2].

-10-

for service of process purposes.[52]  Accordingly, the error is compounded by the fact that Mr. Dundon worked for Pentland USA, which is not a defendant in this case.  Rather, as discussed above, Mr. Dundon was served on behalf of Pentland (or perhaps Pentland USA), under the theory that Pentland USA was a "general manager" for Pentland Group and/or Canterbury of New Zealand.  Mr. Dundon further declared the following:  "Further, I could not tell from the face of the Summons which of these two English companies was the intended recipient as the document specifically states that I was being served 'on behalf of' 210 Brands, the plaintiff.'"[53]  The corrected proof of service that 210 Brands filed on December 15, 2020, does not correct the error in the summons.[54]

        Under these circumstances, the Court finds that service of process was insufficient.  The Court would grant leave for 210 Brands to serve Pentland properly, but such leave would be moot because the Court also dismisses 210 Brands' claims against Pentland on the grounds of *forum non conveniens*, as discussed below.

        **2.**     **<u>Forum Non Conveniens</u>**

        Under the doctrine of *forum non conveniens*, "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy."  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).  "To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  "Ordinarily, a plaintiff's choice of

---

[52]    See Pl.'s Response in Opp'n to Motion to Dismiss [ECF No. 21] at 5:20-7:14.
[53]    Dundon Decl. ¶ 8.
[54]    Notice of Filing Proof of Corrected Service of Summons, Ex. B [ECF No. 46-2].

forum will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial in a foreign country." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

### a. Adequate Alternative Forum

"An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). Here, 210 Brands entered into the Renewed License Agreement, which provides that "[t]he parties irrevocably submit to the exclusive jurisdiction of the courts of England." [55] Accordingly, if the forum selection clause is valid, the courts of England are an adequate alternative forum.

### b. Private Interest Factors

The following factors are used to evaluate whether private interests weigh in favor of dismissal under the *forum non conveniens* doctrine:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Bos. Telecommunications Grp., Inc. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1145).

---

[55] Compl., Ex. A (License Agreement) at ¶ 34.1.

The private interest factors weigh in favor of dismissal. As discussed above, both defendants are English companies with principal places of business in London, England. 210 Brands knowingly engaged in ongoing business dealings with these foreign companies and expressly agreed to submit to the jurisdiction of the courts in London, England. In addition, the Complaint discusses numerous interactions with various Pentland executives who are presumably based in England.[56] Accordingly, the location of these witnesses weighs in favor of this case being heard in England.

### c. Public Interest Factors

The following factors are used to weigh whether the public interest counsels in favor of dismissal on *forum non conveniens* grounds: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006). The most significant public interest factor here is that the License Agreement provides that "[t]he formation, construction, validity and performance of this Agreement shall be governed in accordance with the laws of England."[57] The courts of England are better suited to apply English law. *See, e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 76 (2d Cir. 2003) (choice of law considerations weighed in favor of dismissal on *forum non conveniens* grounds).

### d. Validity of Forum Selection Clause

If the forum selection clause is valid, the public and private factors strongly counsel in favor of dismissal on *forum non conveniens* grounds. Under California law, however, "[a] provision in a franchise agreement restricting

---

[56] *See id.* ¶¶ 25-37.

[57] *Id.*, Ex. A (License Agreement) at ¶ 34.1.

-13-

venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5. 210 Brands argues that it was a franchisee and that the forum selection clause therefore does not apply.[58] Pentland, in turn, argues that it was not a party to the License Agreement and, therefore, that "the franchise laws do not apply to the alleged relationship between Plaintiff and [Pentland] as no contract or other agreement between Plaintiff and [Pentland] has been pled."[59] The License Agreement is between Canterbury of New Zealand Limited and 210 Brands.[60] 210 Brands argues that Pentland is liable under a theory of alter ego liability,[61] but it has not shown that "there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *Automotriz Del Golfo De California S. A. De C. V. v. Resnick*, 47 Cal. 2d 792, 796, 306 P.2d 1, 3 (1957). Moreover, the selection of English law and the location of witnesses still counsels in favor of dismissal of this action with respect to Pentland on the grounds of *forum non conveniens*.

"A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem*, 549 U.S. at 432. For the reasons stated above, the Court finds that dismissal is warranted on the grounds of *forum non conveniens*; the Court does not reach the remaining issues raised in the Motion to Dismiss.

---

[58] *See* Pl.'s Resp. in Opp'n to Motion to Dismiss (the "Opp'n to Motion to Dismiss") [ECF No. 21] 14:1-21.
[59] Reply Br. in Supp. of Motion to Dismiss [ECF No. 29] 8:26-28.
[60] Compl., Ex. A (License Agreement).
[61] Opp'n to Motion to Dismiss 14:1-21.

## IV.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Motion of Plaintiff 210 Brands Incorporated to Remand this action to state court is **DENIED**.

2. The Motion of Defendant Pentland Group Limited to Dismiss for Insufficient Process is **GRANTED**.

3. The Motion of Defendant Pentland Group Limited to Dismiss on the grounds of *forum non conveniens* is **GRANTED**.  Accordingly, 210 Brands' claims for relief against Pentland are **DISMISSED without prejudice**.

4. The Court makes no ruling regarding 210 Brands' claims for relief against Defendant Canterbury of New Zealand Limited, which has not appeared in this action.

**IT IS SO ORDERED.**

Dated: December 29, 2020

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE